**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re:                                         ) Chapter 7
                                               )
ADVANCE NANOTECH, INC.,                        ) Case No. 11-10776 (MFW)
                                               )
                Debtor.                        )
_____)
JEOFFREY L. BURTCH, AS CHAPTER 7               )
TRUSTEE OF THE ESTATE OF DEBTOR                )
ADVANCE NANOTECH, INC.,                        )
                                               )
                Plaintiff,                     )
                                               )
          v.                                   ) Adv. No. 13-51215 (MFW)
                                               )
OWLSTONE, INC., BRETT BADER,                   )
THOMAS FINN, JOHN BUTTLES,                     )
INGALLS & SNYDER, LLC, and HORACE              )
SHEPHARD BOONE,                                )
                                               )
                Defendants.                    )
_____)

## MEMORANDUM OPINION[1]

     Before the Court are the Motions of Owlstone Inc. ("Owlstone"), Ingalls & Snyder, LLC ("I&S"), and Horace Shephard Boone ("Boone") (collectively, the "Movants") to dismiss the First Amended Adversary Complaint (the "Complaint") filed by Jeoffrey L. Burtch, (the "Trustee") as chapter 7 trustee of the estate of the Debtor, Advance Nanotech, Inc. ("AVNA"). The Complaint asserts claims against the Movants for breaches of

---

     [1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure. Accordingly, the Court herein makes no findings of fact or conclusions of law. Instead, the facts recited are as averred in the Complaint, which must be presumed as true for the purposes of this Motion to Dismiss. <u>See Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

fiduciary duty and aiding and abetting breaches of fiduciary duty.  It further asserts a claim for equitable subordination of Owlstone's claims.  For the reasons set forth herein, the Court will partially grant the Motions and dismiss the claims for breaches of fiduciary duty against I&S and Boone.  In all other respects, the Motions will be denied.

I.   BACKGROUND

Defendant Owlstone is a Delaware corporation founded in 2003.  Its principal business is the marketing of a sensor that can detect extremely small quantities of chemical agents.  In May, 2004, AVNA's predecessor acquired approximately 60% of Owlstone's common stock.  AVNA was an investment vehicle for several early stage companies and became Owlstone's principal funding source.

In 2007 and 2008, AVNA issued $7.42 million in Senior Secured Notes secured by its Owlstone stock; the proceeds were downstreamed to Owlstone in the form of debt and equity.  Through these transactions, AVNA became the holder of 83.1% of Owlstone's stock and $2.64 million of Owlstone debt.  In September 2008, AVNA fired its executives and hired Owlstone's CEO and CFO, Defendants Brett Bader and Thomas Finn, respectively, to fill those positions at AVNA.

In 2009 it became apparent that Owlstone and AVNA would run

out of cash.  The Senior Secured Notes issued by AVNA included anti-dilution rights, which prevented AVNA from selling any of its own stock to generate additional capital, without unanimous consent of the Noteholders.  The AVNA board assigned Bader and Finn the task of developing and implementing a fundraising strategy.

In early 2009, Bader advocated a debt to equity deal with the Senior Secured Noteholders, but was instructed by AVNA's board not to pursue that option.  Bader thereafter identified I&S, one of AVNA's Noteholders, who was willing to provide short term financing.  In April, 2009, I&S lent $500,000 to AVNA in a bridge loan.

In May, 2009, AVNA's board of directors gave Bader authority to enter into discussions with the Senior Secured Noteholders regarding the proposed debt to equity conversion.  Although many AVNA Noteholders consented, there were several holdouts.  I&S advanced additional funds throughout the summer of 2009, for a total of $1.3 million (the "Bridge Loan").  The Bridge Loan had a repayment date, after several extensions, of October 25, 2009.

At some point in 2009, Bader began receiving advice from Boone, a principal of I&S, regarding the financing needs of Owlstone and AVNA.  In September and October 2009, Boone proposed to Bader an Owlstone level financing, whereby Owlstone would issue new stock.  If that occurred, AVNA would either default on

the Senior Secured Notes, offer a debt to equity deal to the
Noteholders, or consolidate Owlstone into AVNA.

On October 19, 2009, I&S agreed to purchase the last holdout
Noteholder's debt in order to gain the consent necessary for the
restructuring.  This caused other Noteholders to threaten to
withdraw their consent unless I&S acquired their positions as
well.  I&S refused to purchase any additional Notes, and the
restructuring deal failed.

In November, 2009, Owlstone disseminated an offer to sell
its stock.  The offering stated that Owlstone intended to use a
portion of the funds raised to pay off any remaining inter-
company debt to AVNA in cash.  In lieu of cash repayment,
however, Owlstone satisfied its intercompany debt by assuming
some of AVNA's obligations, including the $1.3 million Bridge
Loan and "deferred compensation" claimed by certain Owlstone/AVNA
employees, including Bader.  The assumed obligations did not
include any Noteholder debt.

As a result of the Owlstone stock sale, by the end of
November, 2009, AVNA's equity position in Owlstone had been
reduced from 81.3% to 37.98%.  Subsequently, Bader and Finn each
resigned from their positions at AVNA but remained CEO and CFO,
respectively, of Owlstone.

Thereafter, AVNA defaulted on its Notes.  On March 15, 2011,
three of the Senior Secured Noteholders filed an involuntary

4

bankruptcy proceeding against AVNA.  On April 18, 2011, the Court entered an order for relief.  The Trustee was appointed on April 20, 2011.

The Trustee sued the Defendants on July 1, 2013.  On August 29, 2013, Defendants I&S and Boone filed a Motion to Dismiss. Owlston filed its Motion to Dismiss on September 11, 2013.  On September 18, 2013, the Trustee amended the Complaint to add additional facts.  Thereafter, on October 2, 2013, the Movants filed new Motions to Dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6).  Briefing was completed on October, 30, 2013.[2]   The matter is ripe for decision.


II.  <u>JURISDICTION</u>

The Court has jurisdiction over these proceedings. 28 U.S.C. § 1334(b) & § 157(b),(c).  The Court has the power to enter an order on a motion to dismiss even if the matter is non-core or it has no authority to enter a final order on the merits. <u>See, e.g.</u>, <u>In re Trinsum Grp., Inc.</u>, 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012) ("After <u>Stern v. Marshall</u>, the ability of bankruptcy judges to enter interlocutory orders in proceedings .

---

[2]   The Trustee submitted a letter on November 27, 2013, calling subsequent authority to the attention of the Court.  The Movants responded to this letter on December 5, 2013.  Because the "subsequent authority" referred to in the parties' letters consists of an oral ruling, the Court does not consider it precedential.

. . has been reaffirmed . . . ."); <u>Boyd v. King Par, LLC</u>, Case
No. 11-CV-1106, 2011 WL 5509873, at *5 (W.D. Mich. Nov. 10, 2011)
("[U]ncertainty regarding the bankruptcy court's ability to enter
a final judgment . . . does not deprive the bankruptcy court of
the power to entertain all pretrial proceedings, including
summary judgment motions.").

III.   <u>DISCUSSION</u>

   A.   <u>Standard of Review</u>

   For the Trustee to survive a Rule 12(b)(6) motion, his
claims must meet the standards of pleading.  The Supreme Court's
decisions in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) and
<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) have shifted federal
pleading standards from notice pleading to a heightened standard.
<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  This
heightened pleading requirement applies to all civil suits in
federal courts.  <u>Id.</u>

   To survive a motion to dismiss, a complaint must contain
"sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face."  <u>Iqbal</u>, 556 U.S. at 678.
A claim is facially plausible "when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."  <u>Id.</u>
"[A] pleading offering only labels and conclusions or a formulaic

recitation of the elements of a cause of action will not do."
Fowler, 578 F.3d at 210.  "Courts have an obligation in matters
before them to view the complaint as a whole and to base rulings
not upon the presence of mere words but, rather, upon the
presence of a factual situation which is or is not justiciable."
Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184
(3d Cir. 2000).  A court must "draw on the allegations of the
complaint, but in a realistic, rather than a slavish, manner."
Id.

Determining whether a complaint is "facially plausible" is
"a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense."  Iqbal, 556
U.S. at 679.  However, "where the well-pleaded facts do not
permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged — but it has not shown —
that the pleader is entitled to relief."  Id.

The Third Circuit has instructed courts to conduct a two-
part analysis.  Fowler, 578 F.3d at 210.  "First the factual and
legal elements of a claim should be separated," with the
reviewing court accepting "all of the complaint's well-pleaded
facts as true, but . . . disregard[ing] any legal conclusions."
Id. at 210-11.  Next, the reviewing court must "determine whether
the facts alleged in the complaint are sufficient to show that
the plaintiff has a plausible claim for relief."  Id.

7

B.   <u>Breach of Fiduciary Duty</u>

The Trustee has asserted breach of fiduciary duty claims against each of the Movants.   The Trustee asserts that the Movants owed fiduciary duties to AVNA by virtue of their exercise of control over it.   Specifically, the Trustee alleges that Owlstone, I&S, and Boone (as a principal of I&S) each exercised control over AVNA through their influence on defendants Bader and Finn and, through Bader and Finn, on AVNA's fundraising efforts. The Trustee further asserts that the Movants breached their duties to AVNA by orchestrating the direct issuance of stock by Owlstone and the assumption of less than all of AVNA's obligations (the "Owlstone Transaction") thus reducing AVNA to a minority shareholder in Owlstone and rendering AVNA insolvent.

The Movants argue that the Trustee's breach of fiduciary duty claims against them must be dismissed because they did not owe fiduciary duties to AVNA and thus could not have breached any such duties.

Under Delaware law, "[a]s a general rule, there is no fiduciary relationship between a debtor and a creditor." <u>Keith v. Sioris</u>, C.A. No. 05C-02-272, 2007 WL 544039, at *7 (Del. Super. Ct. Jan. 10, 2007). (internal quotation omitted).  A creditor is only a fiduciary when it "exercises such control over the decision-making processes of the debtor as amounts to a domination of its will." <u>Matter of Teltronics Servs., Inc.</u>, 29

B.R. 139, 170 (Bankr. E.D.N.Y. 1983).  "Control . . . is
established by facts demonstrating that 'through personal or
other relationships the [individuals] are beholden to the
controlling person.'"  <u>Edgewater Growth Capital Partners LP v.
H.I.G. Capital Inc.</u>, 68 A.3d 197, 229-30 (Del Ch. 2013) (quoting
<u>Odyssey Partners, L.P. v. Fleming Cos., Inc.</u>, 735 A.2d 386, 407
(Del. Ch. 1999)).

     1.  <u>I&S and Boone</u>

     The Complaint alleges that: I&S was an AVNA stockholder and
Senior Secured Noteholder, as well as the Bridge Lender for AVNA.
Boone was a principal of I&S.  On June 29, 2009, Boone sent an
email to the chair of AVNA's board of directors criticizing the
board's fundraising efforts.  Boone sent a draft of this email to
Bader before forwarding it to the board chair.  Additionally,
Boone provided advice to Bader regarding the AVNA financing
efforts and suggested an Owlstone level fundraising in emails to
Bader on September 9, and October 16, 2009.

     I&S and Boone argue that: (1) they did not exercise control
over Bader and Finn, and (2) even if they had exercised control
over Bader and Finn, such control would not result in I&S and
Boone owing fiduciary duties to AVNA because Bader and Finn were
not AVNA directors.

     The Trustee contends that Boone's email to AVNA (sent to
Bader) in draft evidences Boone's control over Bader and AVNA.

The Court finds the email insufficient evidence of control.  The
email only criticizes the Board's actions, or inability, to
obtain financing.  While it appears that I&S and Boone acted in
an advisory role to Bader and Finn in their fundraising attempts,
there are no allegations from which the Court can infer that they
controlled Bader, Finn, or any AVNA director.

The Trustee also alleges that I&S and Boone used the Bridge
Loan as leverage against AVNA.  (Am. Compl. ¶ 74.)  This
conclusory allegation, however, is contradicted by other facts
alleged in the Complaint: I&S extended and increased the amount
of the Bridge Loan several times.  (Am. Coml. ¶¶ 41, 45.)  There
are no allegations that I&S threatened to exercise its rights as
a creditor against AVNA nor that it demanded special
consideration from AVNA.

The Court agrees with the Movants that the facts alleged are
insufficient to support a conclusion that I&S and Boone exercised
control over Bader and Finn, AVNA, or the fundraising process.
Therefore, the Trustee has not alleged sufficient facts to
support a conclusion that I&S or Boone owed fiduciary duties to
AVNA.  As a result the Court will grant the motion to dismiss the
breach of fiduciary duty claims against I&S and Boone, subject to
amendment of the Complaint within thirty days.

2.   Owlstone

Owlstone argues that the breach of fiduciary duty claims

10

against it should be dismissed because: (1) it is a corporate entity incapable of holding fiduciary duties; (2) it is a subsidiary of AVNA, and a subsidiary does not control its parent; and (3) even if a subsidiary could control its parent, Owlstone did not exercise any actual control over AVNA.

Owlstone's first argument is without merit.  The cases cited by Owlstone all correctly note that normally a corporation does not owe fiduciary duties to its shareholders, rather, officers and directors owe fiduciary duties to the corporation.[3]  In the instant case, however, the Trustee does not allege that Owlstone owed fiduciary duties to AVNA merely because it was a shareholder of Owlstone.  Rather, the Trustee alleges that Owstone exercised actual control over AVNA through Bader and Finn, thereby creating a fiduciary duty.  Control over a corporation can give rise to a fiduciary duty.  See OTK Assocs., LLC v. Friedman, CIV.A. 8447-VCL, 2014 WL 684174, at *14 n.1 (Del. Ch. Feb. 5, 2014) (noting

---

[3]  In re Stillwater Capital Partners Inc. Litig., 851 F. Supp. 2d 556, 573 (S.D.N.Y. 2012) ("A corporation does not owe a fiduciary duty to its shareholders."); A.W. Fin. Servs., S.A. v. Empire Res., Inc., 981 A.2d 1114, 1127 (Del. 2009) ("Clearly, the . . . corporation . . . is not a fiduciary to the plaintiff, which is its stockholder."); Arnold v. Soc'y for Savings Bancorp, Inc., 678 A.2d 533, 539 (Del. 1996) (rejecting argument that corporation can be liable for breach of fiduciary duty of disclosure); Alessi v. Barecha, 849 A.2d 939, 950 (Del. Ch. 2004) (dismissing breach of fiduciary duty claim against corporation because "[the corporation] owes no fiduciary duty to [the stockholder]"); In re Wheelabrator Techs. Inc. S'holders Litig., C.A. No. 11495, 1992 WL 212595, at *9 (Del. Ch. Sept. 1, 1992) ("[T]he corporate entity as such is not a fiduciary to its stockholders and cannot be held liable to them on that basis.").

that allegations of actual control were sufficient to create an inference of fiduciary duty).

Owlstone also argues that, as a subsidiary of AVNA, it could not have controlled its parent.  In each of the cases cited for this proposition, however, it is merely assumed that, as a general rule, subsidiaries are subject to the direction and control of their parent entities.  See, e.g., Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771-72 (1984) (noting that a "parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests"); Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 233 F.R.D. 143, 146 (D. Del. 2005) (holding that a subsidiary would not be required to produce documents held by its parent corporation because a subsidiary does not control its parent "by definition," and the relationship between the parent and subsidiary did not justify corporate veil piecing); McGrane v. Hubbell Lenoir City, Inc., C.A. No. 10C-11-154 FSS, 2011 WL 7646200, at *1 (Del. Sup. Ct. Sept. 30, 2011) (noting that, absent "special circumstances," a party litigating against a subsidiary has "little right to documents or other materials held by the parent"); Rothchild Int'l Corp. v. Liggett Grp., Inc., 6 Del. J. Corp. L. 421, 428 (Del. Ch. 1981) (finding that there was no basis to "deviate from the general rule . . . that since a subsidiary corporation by definition does not control the parent

corporation, it cannot be compelled through the discovery process to produce documents and information possessed solely by the parent").

There is no legal principle that states a subsidiary can never exercise actual control over its parent.  In fact, one of the cases cited by Owlstone itself supports the opposite conclusion.  <u>McGrane</u>, 2011 WL 7646200, at *1 ("[C]ourts have required document production by a party's corporate parent where the party exercised sufficient control over it.").  In the instant case, the parent was merely a holding company and shared officers with its subsidiary.  The Trustee alleges that Owlstone, through its officers Bader and Finn, controlled AVNA's attempts to find financing.  If Bader and Finn acted for Owlstone's benefit, rather than for AVNA's, Owlstone may have, in fact, controlled AVNA's fundraising process.

Owlstone's final argument is that the Complaint does not adequately allege that it exercised actual control over AVNA. Owlstone claims that the allegations of the Complaint preclude a finding that it exercised control over AVNA.  Specifically, it asserts that the fact that Bader followed the instructions of AVNA's board in pursuing a deal with the Senior Secured Noteholders proves that Owlstone was not controlling AVNA through him.

13

The Court disagrees.  The Complaint clearly alleges that the fundraising process was completely assigned to Bader and Finn. Although the Board could, and did, exercise its authority to accept or reject the options presented to it, it is alleged that Bader and Finn controlled what those options were.  Furthermore, it is plausible that, as alleged by the Trustee, Bader "switched sides" when negotiations with the Noteholders failed.  Drawing all inferences in favor of the Trustee, it is plausible that Bader and Finn were acting for Owlstone's benefit in pursuing the AVNA fundraising options and that as a result Owlstone was exercising control over the AVNA fundraising process.

The Court finds that the Complaint states a plausible claim that Owlstone exercised actual control over AVNA, and, therefore, had a fiduciary duty to it, which was breached.

C.   <u>Aiding and Abetting Breach of Fiduciary Duty</u>

The Trustee asserts, as an alternative to his breach of fiduciary duty claims, that each of the Movants aided and abetted breaches of fiduciary duty by Bader and Finn, as well as by the AVNA board.  There are four elements to a claim of aiding and abetting a breach of fiduciary duty: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty . . . ,(3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach."  <u>Malpiede v.</u>

Townson, 780 A.2d 1075, 1096 (Del. 2001) (internal quotation marks omitted).

### 1. Fiduciary Relationships

The Complaint adequately pleads the existence of fiduciary relationships. Defendants Bader, Finn, and Buttles were officers or directors of AVNA with attendant fiduciary duties to it. Further, the Court has determined that the Complaint alleges a claim that Owlstone owed a fiduciary duty to AVNA as a result of its actual control.[4]

### 2. Underlying Breach of Fiduciary Duties

The Complaint must also allege facts supporting an underlying breach of fiduciary duty. The Court has already determined that the allegations of the Complaint support a claim that Owlstone breached its fiduciary duty.

The Movants assert that any claim for breach of fiduciary duty against Bader and Finn must fail because Bader and Finn had no authority to approve the Owlstone Transaction as non-directors, and the AVNA board approved the Owlstone Transaction. The Movants point to several cases that hold that non-directors are not liable for breaches of fiduciary duty where challenged transactions were approved by a disinterested and independent

---

[4] The Movants do not contest that, as AVNA officers, Bader and Finn had fiduciary duties to AVNA, nor do they contest the fiduciary duties owed by the AVNA board members. See Gantler v. Stephens, 965 A.2d 695, 708-09 (Del. 2000) ("corporate officers owe fiduciary duties that are identical to those owed by corporate directors").

board of directors.  <u>Official Comm. of Unsecured Creditors v.</u>
<u>Goldman Sachs Credit Partners, L.P. (In re Fedders N. Am. Inc.)</u>,
405 B.R. 527, 540-41 (Bankr. D. Del. 2009); <u>Bridgeport Holdings</u>
<u>Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings,</u>
<u>Inc.</u>), 388 B.R. 548, 574 (Bankr. D. Del. 2008).  These cases,
however, do not support the proposition that an officer can never
be liable for a breach of fiduciary duty simply because the
transaction was approved by the board.

The cases relied upon by the Movants each dismiss claims
against non-directors where both the challenged action was
approved by the board <u>and</u> there were no specific allegations of
misconduct against the non-directors.  <u>See</u> <u>Fedders</u>, 405 B.R. at
541 (noting that "there [was] no specific allegation that any of
the non-director, insider defendants misled the board . . . or
otherwise acted improperly in convincing the board to adopt" the
challenged action); <u>Bridgeport Holdings</u>, 388 B.R. at 574 (holding
that "[a] complaint fails to state a claim against an alleged
officer for breach of fiduciary duty when it fails to allege
facts demonstrating that (1) he took part in the challenged
conduct and (2) failed to demonstrate the due care attendant to
his particular office in doing so").

In contrast, the instant Complaint alleges that the AVNA
fundraising efforts were the responsibility of Bader and Finn,
and that they misled the AVNA board.  Specifically, the Trustee
asserts that Bader and Finn represented to board members that

AVNA would be paid cash for Owlstone's intercompany debt.  (Am. Compl. ¶ 63.)  Additionally, the Complaint alleges that Bader benefitted personally from the Owlstone Transaction, receiving deferred compensation, to which he was not entitled, in the amount of $600,000.  (Am. Compl. ¶ 57.)

Drawing all inferences in favor of the Trustee, the Court concludes that, even if the AVNA board approved the Owlstone Transaction,[5] the Complaint sufficiently alleges the necessary breaches of fiduciary duty by Bader and Finn.

### 3.    Knowing Participation

In the context of aiding and abetting a breach of fiduciary duty, knowing participation "requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach."  Malpiede, 780 A.2d at 1097.

I&S and Boone argue that the aiding and abetting claims against them must be dismissed because, having had direct contact only with Bader and Finn, and not with Buttles (the only member of the AVNA board named as a defendant), they could not have knowingly participated in a breach of fiduciary duty by Buttles.

---

[5]  There is a dispute on this point.  The Complaint states that the Trustee "does not have sufficient information to evaluate whether, in fact, the AVNA Board approved the [Owlstone equity] offering and does not concede that it did."  (Am. Compl. ¶ 66.)  The Movants argue, however, that the Complaint's statement that the AVNA board "acquiesced" in the Owlstone offering illustrates that the Board at least informally approved the transaction.  (Am. Compl. ¶ 7.)  It is not necessary to decide this issue for the Court to rule on the Motion to Dismiss.

The Court has already determined, however, that the Complaint states a claim for breaches of fiduciary duty against Bader and Finn.  The Complaint further alleges that I&S, through Boone, advocated the Owlstone stock sale with knowledge that the transaction would cause AVNA to default on its debt and with knowledge of the roles of Bader and Finn at both Owlstone and AVNA.  These facts are sufficient to create a plausible inference of the knowing participation of I&S and Boone in any fiduciary breach by Bader or Finn.

Owlstone argues nonetheless that the aiding and abetting claim against it must be dismissed because the Owlstone Transaction was the result of arm's length negotiations between Owlstone and AVNA, thus precluding a finding of knowing participation by Owlstone in any breach of fiduciary duty. Liquidation Trust of Hechinger Inv. Co. of Del., Inc. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.), 327 B.R. 537, 550 (D. Del. 2005), aff'd, 278 F. App'x 125 (3d Cir. 2008) ("[A]rm's-length negotiations are inconsistent with participation in a fiduciary breach").

As discussed above, the Court has already found that the Complaint adequately alleges that Owlstone exercised actual control over AVNA.  The allegations that support Owlstone's control over AVNA also create a plausible inference that there was no arm's length transaction between AVNA and Owlstone.  Bader and Finn were responsible for negotiating any AVNA fundraising,

while at the same time acting as CEO and CFO as Owlstone.
Given their positions at Owlstone, the Court finds that the
Complaint states a plausible claim for Owlstone's knowing
participation in any breaches of fiduciary duty by Bader and
Finn.

      D.   Equitable Subordination

     The Trustee argues that Owlstone's claim should be equitably
subordinated to the claims of ANVA's other creditors.

     A claim for equitable subordination has three elements: (1)
inequitable conduct by the claimant; (2) resulting in injury to
other creditors or an unfair advantage to the claimant; and (3)
equitable subordination is consistent with the Bankruptcy Code.
Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.),
554 F.3d 382, 411-12 (3d Cir. 2009).  In determining whether a
creditor engaged in inequitable conduct, "[a]n insider's conduct
is rigorously scrutinized, and the plaintiff bears the burden of
presenting material evidence of unfair conduct."  Autobacs
Strauss, Inc. v. Autobacs Seven Co., Ltd. (In re Autobacs
Strauss, Inc.), 473 B.R. 525, 582 (Bankr. D. Del. 2012).  In
contrast, if the creditor is an outsider of the debtor, more
egregious conduct is required and must be plead with
particularity.  Fedders, 405 B.R. at 554 (noting that the party
seeking equitable subordination of an outsider's debt must plead
with particularity that the outsider "engaged in egregious
conduct such as fraud, spoilation or overreaching"); Sierra

Invs., LLC v. SHC, Inc. (In re SHC, Inc.), 329 B.R. 438, 447 (Bankr. D. Del. 2005) (same).

Owlstone argues that the equitable subordination claim must be dismissed because it was not an insider of AVNA and the Trustee failed to plead with particularity facts showing egregious conduct.

1.   Insider Status

For purposes of equitable subordination, a party is an insider if it "(i) meets the statutory definition of insider, or (ii) is in a close relationship with the debtor to such an extent as to suggest transactions were not conducted at arms length." Autobacs Strauss, 473 B.R. at 582-83.  The statutory definition of an insider under the Bankruptcy Code includes an "affiliate, or insider of an affiliate as if such affiliate were the debtor." 11 U.S.C. § 101(31)(E).  An affiliate includes a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor."  11 U.S.C. § 101(2)(B).

Because AVNA owned more than 20 percent of Owlstone's voting securities, Owlstone was a statutory insider of AVNA.  Further, the Court has already determined that the Complaint alleges sufficient facts to state a claim that Owlstone actually controlled AVNA.  Such control would satisfy the second prong of the insider test for equitable subordination, demonstrating "a close relationship with [AVNA] . . . as to suggest transactions

20

were not conducted at arms length." Autobacs Strauss, 473 B.R.
at 582-83.

Because the Court finds that Owlstone was an insider of
AVNA, Owlstone's conduct must be rigorously scrutinized, and the
Trustee need not plead inequitable conduct with the level of
particularity required for an outsider.

2.   Inequitable Conduct

"[C]ourts recognize three general categories of behavior
that may constitute inequitable conduct: 1) fraud, illegality, or
breach of fiduciary duties; 2) undercapitalization; and 3)
claimant's use of the debtors as a mere instrumentality or alter
ego." Bank of N.Y. v. Epic Resorts-Palm Spring Marquis Villas,
LLC (In re Epic Capital Corp.), 290 B.R. 514, 524 (Bankr. D. Del.
2003).

Owlstone contends that the Trustee does not adequately
allege inequitable conduct because: (1) the aiding and abetting
claims against Owlstone must fail and therefore cannot form the
basis for inequitable conduct; and (2) the Owlstone Transaction
was fully disclosed and conducted at arm's length.

The Court has already addressed both of these arguments in
the context of the Trustee's other claims against Owlstone, and
has found that: (1) the Complaint supports an aiding and abetting
claim against Owlstone; (2) the Complaint sufficiently alleges
that the Owlstone transaction was not conducted at arm's length;
and (3) the Complaint states a claim for breach of fiduciary duty

by Owlstone against AVNA.  Thus, the Court concludes that the complaint alleges sufficient facts to support equitable subordination of Owlstone's claim.

E.   Leave to Amend

Normally, when granting a motion to dismiss, leave will be freely granted to amend the complaint.  See, e.g., Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000) (holding that the court should generally grant leave to amend a complaint dismissed for failure to state a claim); Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984) (noting that a presumption exists in favor of granting the moving party leave to amend); Burtch v. Henry Prod., Inc. (In re AE Liquidation, Inc.), Adv. No. 10-55478, 2012 WL 32589, at *2 (Bankr. D. Del. Jan. 6, 2012) (holding that leave to amend should be freely given in the absence of undue delay, bad faith, undue prejudice, or futility).

In this case, the Court does not find the existence of bad faith, undue prejudice, or futility.  The Court will, therefore, grant the Trustee thirty days to amend the Complaint.


IV.  CONCLUSION

For the reasons stated above, the Motions of I&S and Boone will be granted in part: the breach of fiduciary duty claims against I&S and Boone will be dismissed, subject to the right of the Trustee to amend the Complaint within thirty days.  The

22

Motions to Dismiss will be denied with respect to all other claims.

An appropriate Order is attached.


Dated: April 2, 2014                    BY THE COURT:

                                        Mary F. Walrath
                                        United States Bankruptcy Judge